# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : Case No. 5-18-bk-03323-RNO |
| **Gerald S. Wall aka Gerald Scott Wall,** | : |
| | : Ch. 13 |
| Debtor | : |
| | : |
| **Gerald S. Wall aka Gerald Scott Wall,** | : |
| | : |
| Movant | : |
| | : |
| v. | : |
| | : |
| **United States of America,** | : |
| **Internal Revenue Service,** | : |
| and | : |
| **Honesdale National Bank,** | : |
| | : |
| Respondents | : |

## Certificate of Service

I do hereby certify that on July 2, 2019 I forwarded a true and correct copy of the attached *Order* and *Motion to Sell Real Property at 19 Ferretti Drive, West Wyoming, Luzerne County, PA Free and Clear of Liens of Respondent and Authorize Distribution at Closing* to the following parties, addressed as follows:

**Electronically through ECF**

Office of U. S. Trustee
ustpregion03.ha.ecf@usdoj.gov

Charles J. DeHart, III, Trustee
TWecf@pamd13trustee.com

**By First Class US Mail, postage prepaid:**

United States Attorney
Attention: Civil Process Clerk
William J. Nealon Federal Building
235 North Washington Avenue, Suite 311
Scranton, PA 18503

Attorney General of the US
US Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Internal Revenue Service
Bankruptcy Section
PO Box 7346
Philadelphia, PA 19101-7346

**By certified first class US Mail, postage prepaid:**

Honesdale National Bank
Attn: Greg Gula, Vice President
724 Main Street
Honesdale, PA 18431

/s/ *Lisa M. Doran*

Lisa M. Doran, Esquire, ID # 58879
Attorney for Debtor
Doran & Doran, P.C.
69 Public Square - Suite 700
Wilkes Barre PA 18701
(570) 823-9111

Dated: July 2, 2019

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re:

Gerald S. Wall,
aka Gerald Scott Wall,

**Debtor 1**

Chapter: 13

Case number: 5:18-bk-03323-RNO

Document Number: 101

Matter: Motion for Sale Free and Clear of Liens

Gerald S. Wall,
aka Gerald Scott Wall,
**Movant(s)**

vs.

United State sof America, Internal Revenue Service and
Honesdale National Bank
**Respondent(s)**

### Order

Unless earlier served through CM/ECF, **IT IS ORDERED** that service of this Order and the above-referenced Motion shall be made by the moving party on all respondent(s) named in the Motion claiming an interest in the property, counsel, and in a Chapter 11 case service shall also be made upon the Trustee, if any, U.S. Trustee and the individuals identified in F.R.B.P. 4001(a)(1) and L.B.R 4001-6. Service shall be made within seven (7) days from the date hereof and certification of service filed with this Court within fourteen (14) days from the date hereof.

**IT IS FURTHER ORDERED** that answers to the Motion must be served on the moving party and a copy filed with this Court, within fourteen (14) days from the service date of this Order. If no Response is filed, relief may be granted. A hearing will be held if a responsive pleading is timely filed, requested by the moving party, or ordered by the Court. If a default order has not been signed and entered, the parties or their counsel are required to appear in Court at the hearing on the below date and time.

| United States Bankruptcy Court Courtroom #2, Max Rosenn US Courthouse, 197 South Main Street, Wilkes-Barre, PA 18701 | Date: 7/31/19 |
| --- | --- |
| | Time: 09:30 AM |

Dated: July 2, 2019

By the Court,

*Robt N. Opel II* (signature)

Honorable Robert N. Opel, II
United States Bankruptcy Judge
By: LyndseyPrice, Deputy Clerk

Initial requests for a continuance of hearing (*L.B.F. 9013-3, Request to Continue Hearing/Trial with Concurrence*) shall be filed with the Court. Requests received by the Court within twenty-four (24) hours of the hearing will not be considered except in emergency situations. Additional requests for continuance must be filed as a Motion.

Requests to participate in a hearing telephonically shall be made in accordance with L.B.R. 9074-1(a).

Electronic equipment, including cell phones, pagers, laptops, etc., will be inspected upon entering the Courthouse. These devices may be used in common areas and should be turned to silent operation upon entering the Courtroom and Chambers.

Photo identification is required upon entering the Courthouse.

orreshrg(5/18)



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
: Case No. 5-18-bk-03323-RNO
**Gerald S. Wall aka Gerald Scott Wall,**
: Ch. 13
Debtor

**Gerald S. Wall aka Gerald Scott Wall,**

Movant

v.

**United States of America,**
**Internal Revenue Service,**
**and**
**Honesdale National Bank,**

Respondents

## MOTION TO SELL REAL PROPERTY
## 19 FERRETTI DRIVE, WEST WYOMING, PA
## FREE AND CLEAR OF LIENS OF RESPONDENT
## AND TO MAKE DISTRIBUTION AT CLOSING

The Motion of Gerald S. Wall ("Debtor") by his attorneys, Doran & Doran, P.C., for an Order authorizing the Debtor to complete a sale of real property known as 19 Ferretti Drive, West Wyoming, Pennsylvania free and clear of the Liens of the Respondents pursuant to § 363 of the Bankruptcy Code, and to make distribution at closing, and is as follows:

1. The above Debtor filed for relief under Chapter 13 of the Bankruptcy Code on August 7, 2018. The Chapter 13 Plan was confirmed on May 8, 2019.

2. Among the assets of the Debtor, as set forth on Schedule "A" of the original petition, is a parcel of real property located at 19 Ferretti Drive, West Wyoming, Luzerne County, PA Parcel Identification Number E10SE2-01A-005-000, more specifically described in Luzerne

County Record Book 3016 Page 045427, (hereinafter the "Real Property").

3. The Real Property is encumbered by the following liens:

   a. Any real estate taxes due for the current year.

   b. First Mortgage in favor of Wells Fargo Bank recorded in Luzerne County Record Book 3009 at Page 56224 (balance due on Proof of Claim #12 of $142,639.12 but adequately protection payments have been paid post-petition).

   c. Second Mortgage in favor of PNC Bank recorded in Luzerne County Record Book 3009 at Page 56268 (balance on Proof of Claim #27 of $67,190.05, plus interest due post-petition)

   d. Federal Tax Lien of Internal Revenue Service in the face amount of $69,646.04 filed on July 3, 2018, which has been partially paid from proceeds of sale of another parcel of property.

   e. Judgment of Honesdale National Bank entered by confession in Luzerne County to #2018-7555 on July 9, 2018. This lien was avoided by the Plan confirmation, but HNB is listed as a Respondent in this Motion for free and clear sale to assist in conveying clear title to the purchaser.

4. The Debtor listed the Real Property for sale with Gerald L. Busch Real Estate, Inc., 601 Union Street, Luzerne, PA.

5. The Debtor has now received an offer through the realtor from Donald B. Belcher of Scranton, PA to purchase the Real Property for the sum of $269,000.00. A copy of the Agreement of Sale is attached.

6. Donald B. Belcher is unrelated to the Debtor.

7. The Debtor is proposing to sell the property to Donald B. Belcher and to pay at closing the realtor's commission, pro-rata real estate taxes to date of closing, customary expenses of sale,

including transfer taxes, any municipal liens, and the mortgages of Wells Fargo Bank and PNC Bank in the balances due as of the date of closing..

8. The net proceeds after payment of items in Paragraph 7 will be escrowed and will be paid to the Internal Revenue Service toward its Federal Tax Lien, once the lien payoff has been determined.

9. If excess proceeds remain after the paying of the federal tax lien, the proceeds would then be paid toward the Debtor's exemptions as outlined in the confirmed Chapter 13 Plan, and any remaining balance to the Chapter 13 Trustee.

WHEREFORE, Debtor prays that an Order be entered authorizing the sale of Debtor's Real Property located at 19 Ferretti Drive, West Wyoming, Luzerne County, PA to Donald B. Belcher (or an assignee if the assignee is unrelated to Debtor) free and clear of the Liens of the Respondents and distribution of sale proceeds as described above.

DORAN & DORAN, P.C.

BY: /s/ *Lisa M. Doran*
LISA M. DORAN, ESQUIRE
PA I.D. #58879
Attorneys for Debtor
69 Public Square, Ste. 700
Wilkes-Barre, PA 18701
Dated: July 1, 2019
570-823-9111    fax 570-829-3222
ldoran@doran-law.net

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

ASR

## PARTIES

**BUYER(S):** Donald B. Belcher  
**SELLER(S):** Gerald Scott Wall

**BUYER'S MAILING ADDRESS:**  
10 Meridian Ave Scranton PA 18504

**SELLER'S MAILING ADDRESS:**

## PROPERTY

ADDRESS (including postal city) 19 Ferretti Drive

in the municipality of West Wyoming, County of Luzerne, ZIP 18644-1744
in the School District of Wyoming, in the Commonwealth of Pennsylvania.

Tax ID #(s):

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): E10SE2@1A005 DB 3016 PAGE 04517 and/or

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

[X] No Business Relationship (Buyer is not represented by a broker)

Broker (Company) NONE   Licensee(s) (Name) NONE

Company License #   State License #  
Company Address    Direct Phone(s)  
Company Phone      Cell Phone(s)  
Company Fax        Email

Broker is (check only one):
- [ ] Buyer Agent (Broker represents Buyer only) — Buyer Agent (all company licensees represent Buyer)
- [ ] Seller Agent (See Dual and/or Designated Agent box below) — Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
- [ ] Dual Agent (See Dual and/or Designated Agent box below)

[ ] Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

[ ] No Business Relationship (Seller is not represented by a broker)

Broker (Company) Gerald L Busch Real Estate Inc   Licensee(s) (Name) Gerald Busch Jr

Company License # RM063152   State License # AB068419  
Company Address 601 Union Street, Luzerne, PA 18709   Direct Phone(s)  
Company Phone (570)288-2514   Cell Phone(s) (570)709-7798  
Company Fax    Email

Broker is (check only one):
- [X] Seller Agent (Broker represents Seller only)
- [ ] Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) is (check only one):
- [X] Seller Agent (all company licensees represent Seller)
- [ ] Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
- [ ] Dual Agent (See Dual and/or Designated Agent box below)

[ ] Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: DB    Seller Initials: GSW

Pennsylvania Association of Realtors®

ASR Page 1 of 14

Gerald L Busch Real Estate Inc, 601 Union Street Luzerne, PA 18709  
Gerald Busch   Phone: (570)288-2514   Fax: (570)288-1445

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 1815  
rev. 10/18; rel. 1/19

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   Belcher

---

1. By this **Agreement**, dated June 24, 2019
2. Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
3. **PURCHASE PRICE AND DEPOSITS (4-14)**
4. (A) Purchase Price $ 269,000.00   U.S. Dollars, to be paid by Buyer as follows:
5. (Two Hundred Sixty-Nine Thousand)
6. 
7. 1. Initial Deposit, within ____ days (5 if not specified) of Execution Date,
8. if not included with this Agreement:    $ 2,000.00
9. 2. Additional Deposit within ____ days of the Execution Date:   $
10. 3. _____   $
11. Remaining balance will be paid at settlement.
12. (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
13. within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
14. sonal check.
15. (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here:
16. _____
17. ), who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or ter-
18. mination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
19. the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
20. Agreement.
21. 3. **SELLER ASSIST (If Applicable) (1-10)**
22. Seller will pay $ 8,000.00  or  _____ % of Purchase Price (0 if not specified) toward
23. Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
24. approved by mortgage lender.
25. 4. **SETTLEMENT AND POSSESSION (4-14)**
26. (A) Settlement Date is   one on or before August 16, 2019   or before if Buyer and Seller agree.
27. (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
28. Buyer and Seller agree otherwise.
29. (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
30. current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
31. fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will
32. pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
33. _____
34. (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
35. 1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
36. 2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December
37. 31. School tax bills for all other school districts are for the period from July 1 to June 30.
38. (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
39. (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here:
40. _____
41. (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
42. broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
43. is subject to a lease.
44. (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
45. assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement.
46. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer
47. will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this
48. Agreement.
49. [ ] Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
50. 5. **DATES/TIME IS OF THE ESSENCE (1-10)**
51. (A) Written acceptance of all parties will be on on or before: June 24, 2019
52. (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
53. essence and are binding.
54. (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
55. ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
56. the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
57. tialed and dated.
58. (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
59. ment of the parties.

Buyer Initials: DB    Seller Initials: GSW

ASR Page 2 of 14

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   Belcher

(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

6. ZONING (4-14)
Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
Zoning Classification, as set forth in the local zoning ordinance: Residential

7. FIXTURES AND PERSONAL PROPERTY (1-17)
(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing, heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; imported shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screens/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwasher; trash compactor; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price:
range refrigerator washer dryer ALL AS IS

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g. water treatment systems, propane tanks, satellite dishes and security systems):

(C) EXCLUDED fixtures and items:

8. MORTGAGE CONTINGENCY (10-18)
☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.
☒ ELECTED.
(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

First Mortgage on the Property
Loan Amount $ 259,000.00
Minimum Term 30 years
Type of mortgage Conventional
For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ %
Mortgage lender PNC Bank
interest rate 3.875 %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of 4.500 %.
Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan.

Second Mortgage on the Property
Loan Amount $ NONE
Minimum term _____ years
Type of mortgage
For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ %
Mortgage lender
interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %
Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan.

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than July 19, 2019
1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.
2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Paragraph 8(A), OR
   a. Does not satisfy the terms of Paragraph 8(A), OR
   b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within 7 DAYS after the date indicated in Paragraph 8(B),or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

Buyer Initials: [signature] ASR Page 3 of 14 Seller Initials: [signature]

3. If this Agreement is terminated pursuant to Paragraph 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; Agreement, and any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement.
(3) Appraisal fees and charges paid in advance to mortgage lender(s).

(C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the property.

(D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least 15 days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(E) Within 5 days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

(F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan commitment.

(G) If the mortgage lender(s), or a property and casualty insurer requires providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within 5 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.
1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within 5 DAYS, notify Seller of Buyer's choice to:
   a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

(H) FHA/VA, IF APPLICABLE
It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.
Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of ... influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(I) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
☒ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

(J) Certification We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement

Buyer Initials: [signature] ASR Page 4 of 14 Seller Initials: [signature]

9. **CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
   If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.

10. **SELLER REPRESENTATIONS (4-14)**
    (A) Status of Water
        Seller represents that the Property is served by:
        ☒ Public Water  ☐ Community Water  ☐ On-site Water  ☐ None
    (B) Status of Sewer
        1. Seller represents that the Property is served by:
           ☒ Public Sewer  ☐ Community Sewage Disposal System  ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
           ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)  ☐ Holding Tank (see Sewage Notice 3)
           ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 4, if applicable)
           ☐ None (see Sewage Notice 1)  ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)

        2. Notices Pursuant to the Pennsylvania Sewage Facilities Act
           Notice 1: There is no currently existing community sewage system available for the subject property. Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.
           Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site tests were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
           Notice 3: This Property is serviced by a building tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site. Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.
           Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (e) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.
           Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

    (C) Historic Preservation
        Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

    (D) Land Use Restrictions
        1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):
           ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. §901 et seq.)
           ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
           ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
           ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
           ☐ Other

        2. Notices Regarding Land Use Restrictions
           a. Pennsylvania Right-To-Farm Act: The property you are buying maybe located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance law suits or restrictive ordinances.

           b. Clean and Green Program: Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.

           c. Open Space Act: This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it, Buyer is further advised to determine the term of any covenant now in effect.

           d. Conservation Reserve (Enhancement) Program: Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

    (E) Real Estate Seller Disclosure Law
        Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

    (F) Public and/or Private Assessments
        1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____

        2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

    (G) Highway Occupancy Permit
        Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

11. **WAIVER OF CONTINGENCIES (9-05)**
    If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a **WAIVER** of that contingency and Buyer accepts the Property and agrees to the **RELEASE** in Paragraph 28 of this Agreement.

12. **BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**
    (A) Rights and Responsibilities
        1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.
        2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.
        3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
        4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
        5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

    (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspection must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections).

    (C) For elected inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete inspections, obtain any inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

Case 5:18-bk-03323-RNO    Doc 107    Filed 07/02/19    Entered 07/02/19 16:12:20    Desc
Main Document    Page 10 of 19

## Home/Property Inspections and Environmental Hazards (mold, etc.)

312-321 Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; exterior building material, fascia, gutters and downspouts; swimming pools; hot tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections)  — **Waived**

## Wood Infestation

322-333 Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable law, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property. — **Waived**

## Deeds, Restrictions and Zoning

334-338 Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordinances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: ____ — **Waived**

## Water Service

339-344 Buyer may obtain an Inspection of the quality and quantity of the water system from a property licensed or otherwise qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. — **Elected**

## Radon

345-355 Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates or safe-guards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection. Information about radon and about certified testing or mitigation firms is available through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O. Box 8469, Harrisburg, PA |17105-8469, (800) 23RADON or (717) 783-3594, www.epa.gov — **Waived**

## On-Lot Sewage (If Applicable)

356-362 Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, and empty the individual on-lot sewage disposal system and provide all water needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection Contingency. — **Elected**

## Property and Flood Insurance

363-371 Buyer may determine the insurability of the Property by making application for property and casualty insurance for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases. — **Waived**

## Property Boundaries

372-376 Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations of size of property are approximations only and may be inaccurate. — **Waived**

Buyer Initials: [initials]   Seller Initials: [initials]

---

378-388
**Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any lead-based paint records regarding the Property. — **Elected**

Other ____ — **Elected**

The Inspection selected above do not apply to the following existing conditions and/or items: ____

## (D) Notices Regarding Property & Environmental Inspections

1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating the surface of a structure where it may cause mold and damage to the building's frame.
2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly.
4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.
5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores, pollen and viruses) have been associated with allergic responses.
6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by calling 1-877-724-3258.

## 13. INSPECTION CONTINGENCY (10-18)

(A) The Contingency Period is **15** days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected in Paragraph 12(C).

(B) Within the stated Contingency Period and as the result of any Inspection elected in Paragraph 12(C), except as stated in Paragraph 13(C):

1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL present all Report(s) in their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR

2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in their entirety to Seller and terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR

3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.

The Proposal may, but is not required to, include the name(s) of a property licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workman like manner according to the terms of Buyer's Proposal.

a. Following the end of the Contingency Period, Buyer and Seller will have ____ days (5 if not specified) for a Negotiation Period. During the Negotiation Period:
   (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
   (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
   If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the Negotiation Period ends.

b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within ____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:
   (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this

Buyer Initials: [initials]   Seller Initials: [initials]

Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.

(C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within ___ days (15 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the stated time, Buyer will notify Seller in writing of Buyer's choice to:
1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms stated in Paragraph 26 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

## 14. TITLES, SURVEYS AND COSTS (9-18)

(A) Within ___ days (7 if not specified from the Execution Date of the Agreement, Buyer will order from a reputable title company for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report to Seller.

(B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.

(C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller, notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

(H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or (eased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

(I) COAL NOTICE (Where Applicable)
☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:

(K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here:
☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.

2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

## 15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)

(A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within __5__ DAYS that Buyer will:
   a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

(B) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Seller receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.

1. Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:
   a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
   b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within __5__ DAYS that Buyer will:
      (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph 28, of this Agreement and make the repairs at Buyer's expense after settlement, OR
      (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the notice provided by the municipality.

3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 15(B)(3) will survive settlement.

## 16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)

(A) Property is NOT a Condominium or part of a Planned Community unless checked below.
☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.

(B) THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:
If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant), Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public

Buyer Initials: DG / Seller Initials: [initials]
ASR Page 9 of 14
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com   Baker

Buyer Initials: [initials] / Seller Initials: [initials]
ASR Page 10 of 14

Case 5:18-bk-03323-RNO    Doc 107    Filed 07/02/19    Entered 07/02/19 16:12:20    Desc
Main Document    Page 12 of 19

Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
(C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:
1. Within __15__ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.
2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incurred information provided by the association in the Certificate.
3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing, upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation, (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

17. **REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property, at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

18. **MAINTENANCE AND RISK OF LOSS (1-14)**
(A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property specifically listed in this Agreement) in its present condition, normal wear and tear excepted.
(B) If any part of the Property included in the sale fails before settlement, Seller will:
1. Repair or replace that part of the Property before settlement, OR
2. Provide prompt written notice to Buyer of Seller's decision to:
   a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender, if any, OR
   b. Not repair or replace the Property.
3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or if Seller fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within __5__ DAYS or before Settlement Date, whichever is earlier, that Buyer will:
   a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:
1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

19. **HOME WARRANTIES (1-10)**
At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

20. **RECORDING (9-05)**
This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

21. **ASSIGNMENT (1-10)**
This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

22. **GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.
(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

23. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

24. **NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

25. **REPRESENTATIONS (1-10)**
(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
(B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.
(C) Any repairs required by this Agreement will be completed in a workmanlike manner.
(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

26. **DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)**
(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))
(C) Buyer and Seller agree that if there is a dispute over the deposit monies that is unresolved _____ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit monies prior to any distributions made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

Buyer Initials: _DS_   ASR Page 11 of 14   Seller Initials: _GSW_
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Belcher

Buyer Initials: _DS_   ASR Page 12 of 14   Seller Initials: _GSW_
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Belcher

Case 5:18-bk-03323-RNO    Doc 107    Filed 07/02/19    Entered 07/02/19 16:12:20    Desc
Main Document    Page 13 of 19

(D) Buyer and Seller agree that a Broker who holds or disburses deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
  1. Fail to make any additional payments as specified in Paragraph 2, OR
  2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
  3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
  1. On account of purchase price, OR
  2. As monies to be applied to Seller's damages, OR
  3. As liquidated damages for such default.

(G) ☐ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

27. **MEDIATION (1-10)**
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

28. **RELEASE (9-05)**
Buyer releases, quits claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the on-site individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

29. **REAL ESTATE RECOVERY FUND (4-18)**
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

30. **COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.

(B) Whenever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to Paragraph 16. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Whatever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

31. **HEADINGS (4-14)**
The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

32. **SPECIAL CLAUSES (1-10)**
(A) The following are attached to and made part of this Agreement if checked:
☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
☐ Sale & Settlement of Other Property Contingency with Right to Confirm Marketing Addendum (PAR Form SSPCM)
☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
☐ Appraisal Contingency Addendum (PAR Form ACA)
☐ Short Sale Addendum (PAR Form SHS)

(B) Additional Terms:

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

☒ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
☒ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.
☒ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.
☒ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

BUYER _[signature]_ Donald B. Belcher                           DATE 6/21/19

BUYER _[signature]_                                             DATE 6/21/19

BUYER                                                           DATE

☒ Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
☒ Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

SELLER _[signature]_ Gerald Scott Wall                          DATE 6/14/19

SELLER                                                          DATE

SELLER                                                          DATE

ASR Page 13 of 14
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Belcher
Buyer Initials: _[initials]_   Seller Initials: GSW

ASR Page 14 of 14
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Belcher

Case 5:18-bk-03323-RNO    Doc 107    Filed 07/02/19    Entered 07/02/19 16:12:20    Desc
Main Document    Page 14 of 19

# BIRCHWOOD BASEMENT WATERPROOFING
608 Old Meadows Avenue • Dallas, PA 18612-1817
570-262-7060 • Office 570-255-0138
JOSEPH CZARNECKI, OWNER

JOB PLAN NO. N⁰ 9088

SCHEDULE FOR: DB GSW

CUSTOMER NAME: Jerry Wall 357-9327
PHONES: 709-7798 (Jerry B)
ADDRESS: 19 Ferretti Dr
DIR.: W. Wyoming

LINEAR FEET OF JOB: 142  FEET OF GAP: ___  CH. DRAIN: 142'

**DESCRIPTION CODE**
1. Cinder Block Wall (circled)
2. Tile Wall
3. Stone Wall
4. Concrete Wall
5. Paneled Wall
6. Tile Floor
7. Concrete Floor (circled)
8. Wood on Floor
9. Carpet on Floor
10. Slab Floor
11. Furnace
12. Sink
13. Floor Drains
14. Sump Pump (circled)
15. Windows
16. Porch or Patio
17. Fireplace
18. Outside Door
19. Stair Platform
20. Oil or Water Tanks / Water Heater

**Job plan instructions (handwritten):**
Ft. drain for all exterior walls — 142'

12' of speed drain around furnace & water heater

**SUMP PIT:**
Pump: 1/3 HP
Guarantee: 7 Years
Sump Liner: 18" x 24" — yes
Check Valve: Yes
Battery Back-Up: Yes/No

Electrical Receptacle - Extra Charge

JOB DESCRIPTION: Remove lower 1' of drywall & base plate

COST OF JOB: $6980   LESS DEPOSIT: $2000
PAY $4980 UPON COMPLETION OF JOB
CONSULTANT: Joe Czarnecki  6/17/19
SENIOR CITIZEN SPECIAL DISCOUNT

---

**ADDENDUM/ENDORSEMENT TO AGREEMENT OF SALE**

PROPERTY: 19 Ferretti Dr, West Wyoming, PA 18644-1744
SELLER: Gerald Scott Wall
BUYER: Donald B. Belcher
DATE OF AGREEMENT: June 24, 2019

1. Buyer is aware that there is water leakage and dampness in the basement. Seller agrees to pay for and install a basement waterproofing system prior to settlement. Attached to this agreement of sale is the estimate from Birchwood Basement Waterproofing that has been reviewed and agreed upon by the buyer and seller. Buyer is advised to have the property inspected.
2. Repair plumbing leak under kitchen sink
3. Replace broken window in the front second floor bedroom
4. Clean the rain gutters and reinstall the gutters extensions.

All other terms and conditions of the Agreement of Sale remain unchanged and in full force and effect.

BUYER: Donald B. Belcher  DATE 6/24/19
BUYER: _____  DATE _____
SELLER: Gerald Scott Wall  DATE 6/24/19
SELLER: _____  DATE _____

WITNESS: _____
WITNESS: _____
WITNESS: _____
WITNESS: _____
WITNESS: _____
WITNESS: _____

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 1993

Case 5:18-bk-03323-RNO    Doc 107    Filed 07/02/19    Entered 07/02/19 16:12:20    Desc
Main Document    Page 15 of 19

# LISTING CONTRACT (SELLER AGENCY CONTRACT)
## EXCLUSIVE RIGHT TO SELL REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1. Broker (Company) Gerald L Busch Real Estate Inc   Licensee(s) (Name) Gerald Busch Jr
2. 
3. Company Address 601 Union St, Luzerne, PA 18709-1204   Direct Phone(s)
4.                                                          Cell Phone(s) (570)709-7798
5. Company Phone (570)288-2514                              Fax
6. Company Fax                                              Email jerrybuschjr@aol.com
7. SELLER Gerald Wall, ~~Christine Wall~~
8. 
9. SELLER'S MAILING ADDRESS
10. 
11. PHONE (570)357-9327                                     FAX
12. E-MAIL
13. Seller understands that this Listing Contract is between Broker and Seller.
14. Does Seller have a listing contract for this Property with another broker?   ☐ Yes ☒ No
15. If yes, explain:

16. **1. PROPERTY**                                         LISTED PRICE $ 3/(269.00 )
17.    Address 19 Ferretti Drive                            West Wyoming      PA  ZIP 18644
18.    Municipality (city, borough, township) West Wyoming
19.    County Luzerne                                       School District Wyoming Area
20.    Zoning Residential
21.    Present Use Residence
22.    Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date) E10SE201A005 DB 2614
23.    PAGE 163
24. **2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
25.    (A) No Association of Realtors® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed
26.        and agreed upon the term of this Contract.
27.    (B) Starting Date: This Contract starts when signed by Broker and Seller, unless otherwise stated here:
28.    (C) Ending Date: This Contract ends at 11:59 PM on 02/28/2019 . By law, the term of a listing contract may not
29.        exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is au-
30.        tomatically 364 days from the Starting Date of this Contract.
31. **3. DUAL AGENCY**
32.    Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a
33.    Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer
34.    and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for
35.    a buyer and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that
36.    Broker is a Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.
37. **4. DESIGNATED AGENCY**
38.    Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the inter-
39.    ests of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
40.    ☐ Designated Agency is not applicable.
41. **5. BROKER'S FEE**
42.    (A) No Association of Realtors® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
43.        will pay Broker.
44.    (B) Broker's Fee is 5.000 % of the sale price OR $ _____ , whichever is greater, AND $ _____ ,
45.        paid to Broker by Seller as follows:
46.        1. $ _____ of Broker's Fee is earned and due (non-refundable) at signing of this Listing Contract, payable
47.           to Broker.

48. Broker/Licensee Initials: [signature]                    Seller Initials: GW

Pennsylvania Association of Realtors®

                                                            XLS Page 1 of 6

Gerald L Busch Real Estate Inc, 601 Union Street Luzerne, PA 18709
Phone: (570)288-2514    Fax:                    Gerald Busch

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2018
rev. 1/18; rel. 4/18

---

# CHANGE TO LISTING CONTRACT

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

PROPERTY 19 Ferretti Drive, West Wyoming, PA 18644

BROKER (Company) Gerald L Busch Real Estate Inc

SELLER Gerald Wall

DATE OF LISTING CONTRACT 2019                              LISTING PRICE $ 289,900.00

Broker and Seller agree to change the terms of the above Listing Contract as follows:

1. Ending Date of the Listing Contract is changed to: August 31, 2019
2. Listed Price is changed to: $ 269,900.00
3. Appoint Designated Agent(s):
   Seller renounces the agency relationships held with all licensees affiliated with Broker who are not Designated Agents for Seller.
   Any licensee(s) that has been previously designated and is not being removed in paragraph 4 remains a Designated Agent for Seller.
4. Remove Designated Agent(s):
5. Other:

All other terms and conditions of the Listing Contract remain unchanged and in full force and effect.

SELLER Gerald Wall [signature]       DATE
       Gerald Wall

SELLER _____       DATE

SELLER _____       DATE

BROKER (Company Name) Gerald L Busch Real Estate Inc

ACCEPTED BY Gerald Busch Jr [signature]                    DATE June 6, 2019
            Gerald Busch Jr

Pennsylvania Association of REALTORS®

                                                           COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2011
                                                                                                      12/11
                                                                                                    JS Wall

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.
   (C) Seller agrees that if Seller names Broker or Broker's Licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and Licensee(s) will be paid by Seller.

12. OTHER PROPERTIES
    Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

13. ADDITIONAL OFFERS
    Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS
    (A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or environmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
        1. is a possible danger to those living on the Property, OR
        2. has a significant, adverse effect on the value of the Property.
        The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.
    (B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
    (C) If Seller fails to disclose known material defects and/or environmental hazards:
        1. Seller will not hold Broker or Licensee(s) responsible in any way;
        2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
        3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or settlements (money Broker or Licensee pays to end a lawsuit or claim).

15. IF PROPERTY WAS BUILT BEFORE 1978
    The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does not require the seller to repair lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to housing built in 1978 or later.

16. HOME WARRANTIES
    At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to Broker.

17. RECOVERY FUND
    Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

18. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA
    Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR hANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONShIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO hAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

Broker/Licensee Initials: _____  Seller Initials: _____    XLS Page 3 of 6    JS Wall

---

2. Seller will pay the balance of Broker's Fee if:
   a. Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller, OR
   b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller, OR
   c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
   d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
   e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay from any money paid by the government, OR
   f. A sale occurs after the Ending Date of this Contract IF:
      (1) The sale occurs within __60__ days of the Ending Date, AND
      (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
      (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
   (C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment contract.

6. BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR
   If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker __ONE HALF__ off/from deposit monies.

7. COOPERATION WITH OTHER BROKERS
   Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay from Broker's Fee a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
   (A) ☐ Represents Seller (SUBAGENT). Broker will pay _____ of/from the sale price.
   (B) ☒ Represents the buyer (BUYER'S AGENT). Broker will pay __2.5__ of/from the sale price.
         A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
   (C) ☐ Does not represent either Seller or a buyer (TRANSACTION LICENSEE). Broker will pay _____ off/from the sale price.

8. DUTIES OF BROKER AND SELLER
   (A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property.
   (B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
   (C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker.
   (D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
   (E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract, without Broker's written consent.

9. BROKER'S SERVICE TO BUYER
   Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

10. BROKER NOT RESPONSIBLE FOR DAMAGES
    Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

11. DEPOSIT MONEY
    (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person holding the deposit monies may wait to deposit any uncashed check that is received us deposit money until Seller has accepted an offer.
    (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
        1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

Broker/Licensee Initials: _____  Seller Initials: _____    XLS Page 2 of 6    JS Wall

Case 5:18-bk-03323-RNO    Doc 107    Filed 07/02/19    Entered 07/02/19 16:12:20    Desc
Main Document    Page 17 of 19

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.
(C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES
Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS
Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS
(A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or environmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
1. is a possible danger to those living on the Property, or
2. has a significant, adverse effect on the value of the Property.
The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.
(B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
(C) If Seller fails to disclose known material defects and/or environmental hazards:
1. Seller will not hold Broker or Licensee(s) responsible in any way;
2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or settlements (money Broker or License pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978
The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to housing built in 1978 or later.

## 16. HOME WARRANTIES
At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECOVERY FUND
Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee, because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

## 18. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA
Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

Broker/Licensee Initials: [sig]  Seller Initials: [sig]  XLS Page 3 of 6  [sig] JS Wall

## 19. TRANSFER OF THIS CONTRACT
(A) Seller agrees that Broker may transfer this Contract to another broker when:
1. Broker stops doing business, OR
2. Broker forms a new real estate business, OR
3. Broker joins his business with another.
(B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all requirements of this Contract with the new broker.

## 20. NO OTHER CONTRACTS
Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before the Ending Date of this Contract.

## 21. CONFLICT OF INTEREST
It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.

## 22. ENTIRE CONTRACT
This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not a part of this Contract.

## 23. CHANGES TO THIS CONTRACT
All changes to this Contract must be in writing and signed by Broker and Seller.

## 24. MARKETING OF PROPERTY
(A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here:

1. ☐ Seller does not want the listed Property to be displayed on the Internet.
   ☐ Seller does not want the address of the listed Property to be displayed on the Internet.
2. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.
(B) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to the open house.
(C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as "VOW") or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Sellers have the right to control some elements of how their property is displayed on a VOW and/or IDX websites.
Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
   ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Seller's listing.
   ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with the Seller's listing.
(D) Multiple Listing Services (MLS)
   ☐ Broker will not use a Multiple Listing Service (MLS) to advertise the Property.
   ☒ Broker will use a Multiple Listing Service (MLS) to advertise the Property to other real estate brokers and salespersons. Listing broker shall communicate to the MLS all of Seller's elections made above.
(E) Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in the MLS or advertising of the Property.
(F) Other

## 25. PUBLICATION OF SALE PRICE
Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of the Property.

## 26. COPYRIGHT
In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, world-wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

Broker/Licensee Initials: [sig]  Seller Initials: [sig]  XLS Page 4 of 6  [sig] JS Wall

# 27. FIXTURES AND PERSONAL PROPERTY

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, (including rods and brackets), shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Also included: _Kitchen Dish____ _Kitchen Refrigerator_____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

# 28. TAXES & SPECIAL ASSESSMENTS

(A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____

(B) Yearly Property Taxes $ _____ Property Assessed Value $ _____

(C) Is the property preferentially assessed (including a tax abatement)? ☐ Yes ☐ No
If applicable, how many years remain? _____

(D) COA/HOA Name _____ COA/HOA Phone _____
COA/HOA special assessments $ _____ Buyer's required capital contribution $ _____
Please explain: _____

(E) Municipality Assessments $ _____ ☐ Quarterly ☐ Monthly ☐ Yearly
(F) COA/HOA Fees $ _____

# 29. TITLE & POSSESSION

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
☐ Oil ☐ Gas ☐ Mineral ☐ Other
If checked, please explain: _____

(C) Seller has:
☐ First mortgage with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Second mortgage with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____
☐ Home Equity line of credit with _____ Amount of balance $ _____
Address _____
Phone _____ Acct. # _____

☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

(D) Seller has:
☐ Judgments $ _____ ☐ Past Due Municipal Assessment $ _____
☐ Past Due Property Taxes $ _____ ☐ Past Due COA/HOA Fees $ _____
☐ Federal Tax Liens $ _____ ☐ Past Due COA/HOA Assessments $ _____
☐ State Tax Liens $ _____
☐ Other: _____ $ _____

(E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania county, list the county and the Domestic Relations Number or Docket Number: _____

# 30. BUYER FINANCING Seller will accept the following arrangements for buyer to pay for the Property:

☒ Cash ☒ Conventional mortgage ☒ FHA mortgage ☒ VA mortgage
☐ Seller's Assist to buyer (if any) $ _____, or _____ %

Broker/Licensee Initials: JLB / ___ XLS Page 5 of 6 Seller Initials: GW / ___

# 31. SPECIAL INSTRUCTIONS

The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.

# 32. SPECIAL CLAUSES

(A) The following are part of this Listing Contract if checked:
☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
☐ Single Agency Addendum (PAR Form SA)
☐ Consumer Services Fee Addendum (PAR Form CSF)
☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
☐ Short Sale Addendum (PAR Form SSL)

(B) Additional Terms: _____

___/___/___ Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
___/___/___ Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.
___/___/___ Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.

Seller has read the entire Contract before signing. Seller must sign this Contract.

Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed.

Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

NOTICE BEFORE SIGNING: IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.

SELLER _/s/ Gerald Wall_____ DATE _____
Gerald Wall

SELLER _____ DATE _____

SELLER _____ DATE _____

BROKER (Company Name) _Gerald L Busch Real Estate Inc_

ACCEPTED ON BEHALF OF BROKER BY _/s/ Gerald Busch Jr_ DATE _____
Gerald Busch Jr

XLS Page 6 of 6

Case 5:18-bk-03323-RNO Doc 107 Filed 07/02/19 Entered 07/02/19 16:12:20 Desc
Main Document Page 19 of 19